IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| PATRICIA TOMASELLO, et al. | ) | |
| | ) | |
| Plaintiffs | ) | |
| | ) | |
| v. | ) | Case 1:19-cv-384 (KBJ) |
| | ) | |
| | ) | |
| JAMIE GREENZWEIG, et al. | ) | |
| | ) | |
| Defendants | ) | |

## DEFENDANTS' JAMIE GREENZWEIG AND MICHAEL T. REILLY'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

I.  INTRODUCTION ............................................................................................................. 2

II.  BACKGROUND ............................................................................................................. 3

III.  LEGAL STANDARD .................................................................................................... 4

IV.  ARGUMENT .................................................................................................................. 6

    A.  PERSONAL JURISDICTION ..................................................................................... 6

    B.  VENUE ...................................................................................................................... 15

    C.  LACK OF SUBJECT MATTER JURISDICTION ..................................................... 17

    D.  FAILURE TO STATE A CLAIM .............................................................................. 20

V.  CONCLUSION .............................................................................................................. 40

CERTIFICATE OF SERVICE .......................................................................................... 41

# TABLE OF AUTHORITIES

## CASES

Almy v. Grisham, 273 Va. 68 (2007) ..............................................................22

Am. Nat'l Ins. Co. v. JPMorgan Chase & Co., 164 F. Supp. 3d 104 (D.D.C. 2016)....................35

Anderson v. Creighton, 483 U.S. 635 (1987) ..............................................25

Armstrong v. Thompson, 80 A.3d 177 (2013)..............................................21

Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49 (2013) ...................................16

Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007) ......................................................5, 6

Bianchi v. Rylaarsdam, 334 F.3d 895 (9th Cir. 2004)...................................18

Bigelow v. Garrett, 299 F. Supp. 3d 34 (D.D.C. 2018) ................................7

Brooks v. Arthur, 611 F. Supp. 2d 592 (W.D. Va. 2009)........................................39, 40

Brystol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty., 137 S. Ct. 1773 (2017) ................................................................................6

Caldwell v. Obama, 6 F. Supp. 3d 31 (D.D.C. 2013) ...........................................22, 29

Century Int'l Arms, LTD v. Fed. State Unitary Enter. State Corp. Rosvooroushenie, 172 F. Supp. 2d 79 (D.D.C. 2001) ....................................................39

Charlton v. Mond, 987 A.2d 436 (D.C. 2009) ...........................................11

Cockrell v. Cumberland Corp., 458 A.2d 716 (D.C. 1983)................................12

Cockrum v. Donald J. Trump for President, Inc., 319 F. Supp. 3d 158 (D.D.C. 2018) ................................................6, 7, 8, 10, 13, 15, 16

Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) ...................................17

Crane v. New York Zoological Soc., 894 F.2d 454 (D.C. Cir. 1990) .............................4

Crawford v. Parron, 709 F. Supp. 234 (D.C. Cir. 1986)................................31

Cruey v. Huff, 2010 U.S. Dist. LEXIS 118374 (W.D. Va. Nov. 8, 2019) ....................................25

D.C. Ct. App. v. Feldman, 460 U.S. 462 (1983) ...........................................17

Daimler AG v. Bauman, 571 U.S. 117 (2014)..............................................................14

Davani v. Va. Dep't of Transp, 434 F.3d 712 (4th Cir. 2006) ......................................18

Doe v. Board on Professional Responsibility of District of Columbia Court of Appeals,
    717 F.2d 1424 (D.C. Cir. 1983) ...........................................................................28

Doe v. Chiquita Brands Int'l, Inc., 285 F. Supp. 3d 228 (D.D.C. 2018).......................10

Dotson v. Harman, 232 Va. 402 (1986).........................................................................39

Duggin v. Adams, 234 Va. 221 (1987)....................................................................36, 37

Dunlap v. Cotton Transmission Sys., LLC, 28 Va. 207 (2014)................................21, 36

Dunn, McCormak & MacPherson v. Connolly, 281 Va. 552 (2011) ...........................38

EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A., 246 F. Supp. 3d 52 (D.D.C.
    2017).......................................................................................................................8

Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280 (2005)......................17

Fam v. Bank of Am. NA (USA), 236 F. Supp. 3d 397 (D.D.C. 2017)...........................5

Fauzi v. Al Jazeera Media Network, 273 F. Supp. 3d. 182 (D.D.C. 2017) ...................5

FC Inv. Group LC v. IFX Mkts., Ltd., 529 F.3d 1087, 381 U.S. App. D.C. 383 (D.C. Cir.
    2008)........................................................................................................................7

Forrseter v. White, 484 U.S. 219 (1988).......................................................................25

Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915 (2011) ...................6

Graves v. U.S., 961 F. Supp. 314 (D.D.C. 1997)..........................................................23

Greenwood v. Peacock, 384 U.S. 808 (1966)...............................................................24

Grites v. Clark County, 14 Va. Cir. 165 (1988).............................................................37

Harris v. Omelon, 985 A.2d 1103 (D.C. 2009)..............................................................12

Hudson v. Palmer, 468 U.S. 517 (1984) .......................................................................29

Ibrahim Martin-Bangura v. Commonwealth Dep't of Mental Health, 640 F. Supp. 729
    (E.D. Va. 2009) .....................................................................................................39

Imbler v. Pachtman, 424 U.S. 409 (1976) ...............................................................25, 34

Int'l Action Ctr. v. United States, 365 F.3d 20 (D.C. Cir. 2004) .................................34

James v. Jane, 221 Va. 43 (1980) .................................................................................38

Jordan v. District of Columbia, 161 F. Supp. 3d 45 (D.D.C. 2016) .............................32

Kush v. Rutledge, 460 U.S. 719 (1983) ........................................................................23

Lamont v. Haig, 590 F.2d 1124 (D.C. Cir. 1978) .........................................................15

Lane v. Franks, 573 U.S. 228 (2014) ............................................................................34

Leis v. Flynt, 439 U.S. 438 (1979) ...............................................................................28

Lemon v. Kramer, 270 F. Supp. 3d 125 (D.D.C. 2017) .................................................6

Lentz v. Morris, 236 Va. 78 (1988) ..............................................................................36

Livnat v. Palestinian Auth., 851 F.3d 45 (D.C. Cir. 2017) ............................................4

Malley v. Briggs, 475 U.S. 335 (1986) .........................................................................25

Matthews v. Eldridge, 424 U.S. 319 (1976) .................................................................29

Messina v. Burden, 228 Va. 301 (1984) .......................................................................36

Mikkilineni v. Pa., 2003 U.S. Dist. LEXIS 13669 (D.D.C. 2003) ...............................17

Moore v. Idealease of Wilmington, 465 F. Supp. 2d 484 (E.D.N.C. 2006) .............5, 19

N.A. for Advancement of Multijurisdictional Practice v. Berch, 773 F.3d 1037 (9th Cir. 2014) ..................................................................................................................28

Okusami v. Psychiatric Institute of Washington, Inc., 959 F.2d 1062 (D.C. Cir. 1992) ..............22

Oveissi v. Islamic Republic of Iran, 573 F.3d 835 (D.C. Cir. 2009) ............................35

Parrat v. Taylor, 451 U.S. 527 (1981) ..........................................................................24

Patchak v. Jewell, 109 F. Supp. 3d 152 (D.D.C. 2015) ...........................................27, 28

Pearson v. Callahan, 555 U.S. 223 (2009) ...................................................................24

Peavey v. Holder, 657 F. Supp. 2d 180 (D.D.C. 2009) ................................................23

Estate of Phillips v. District of Columbia, 455 F.3d 397 (D.C. Cir. 2006)....................................24

Perimutter v. Varone, 59 F. Supp. 3d 107 (D.D.C. 2014) ............................................................16

Pinaud v. County of Suffolk, 52 F.3d 1139 (2d Cir. 1995) ...........................................................25

Prof'l Managers' Ass'n v. United States, 761 F.2d 740 (D.C. Cir. 1985)....................................17

Reno v. Flores, 507 U.S. 292 (1993) ............................................................................................32

Rooker v. Fidelity Trust, Co., 263 U.S. 413 (1923) ......................................................................17

Root v. Liston, 363 F. Supp. 2d 190 (D. Conn. 2005)...................................................................25

Saucier v. Katz, 533 U.S. 194 (2001) ...........................................................................................24

Second Amendment Foundation v. United States Conference of Mayors, 274 F.3d 521
    (D.C. Cir. 2001)........................................................................................................................11

Sheetz v. Norwood, 608 Fed. Appx. 401 (7th Cir. 2015) ..............................................................18

Skinner v. Switzer, 131 S. Ct. 1289 (2011) ...................................................................................17

Slate v. Public Defender Serv., 31 F. Supp. 3d 277 (D.D.C. 2014) .........................................2, 10

Smith v. Ware, 244 Va. 374 (1992) ...............................................................................................39

Stepanek v. Delta County, 940 P.2d 364 (1997)............................................................................26

Swecker v. Midland Power Coop., 253 F. Supp. 3d 274 (D.D.C. 2017)..........................................6

Thomson v. Gaskill, 315 U.S. 442 (1942) .......................................................................................5

Walden v. Fiore, 571 U.S. 277 (2014)...................................................................................7, 8, 14

We the People Found, Inc. v. United States, 485 F.3d 140 (D.C. Cir. 2007)................................28

Wiggins v. Phillip Morris, Inc., 853 F. Supp. 470 (D.D.C. 1994)...........................................21, 22

Williams v. Savage, 538 F. Supp. 2d 34 (D.D.C. 2008).................................................................22

Wilson v. City of Chanute, 43 F. Supp. 2d 1202 (D.Kan. 1999)....................................................26

Wilson v. Layne, 526 U.S. 603 (1999) ...........................................................................................24

Wolf v. McDonnell, 418 U.S. 539 (1974) ......................................................................................32

World Wide Minerals, Ltd. v. Republic of Kazakhstan, 296 F.3d 1154, 353 U.S. App.
D.C. 147 (D.C. Cir. 2002) ..................................................................................7

Young v. City of Norfolk, 62 Va. Cir. 307 (2003) ......................................................22

Yourning Jin v. Ministry of State Sec., 335 F. Supp. 2d 72 (D.D.C. 2004) ...............7, 8

## STATUTES

U.S. Const., amend. I .................................................................................................27

28 U.S.C.S. § 451......................................................................................................20

28 U.S.C. § 1391................................................................................................5, 15, 16

28 U.S.C. § 1406.........................................................................................................5

42 U.S.C. § 1983.............................................................................................24, 26, 29

42 U.S.C. § 1985.....................................................................................................20, 23

D.C. Code § 13-423 ..................................................................8, 9, 11, 12, 13, 14

Va. Code § 8.01-271.1 .............................................................................................10

Va. Code Ann. § 18.2-460A .....................................................................................22

Va. Code Ann. § 54.1-3903 .....................................................................................22

## RULES

Fed. R. Civ. P. 12(b) ..............................................................................................2, 4

Va. Sup. Ct. R. 1:6....................................................................................................38

Va. Sup. Ct. R. 4:15.....................................................................................10, 11, 22

Va. R. Prof. Cond. 3.4(f)..........................................................................................22

Va. R. of Prof. Cond. 3.8(b)................................................................................25, 34

COME NOW, Defendants Jamie Greenzweig and Michael T. Reilly, by counsel and in and for their Memorandum of Points and Authorities in Support of Motion to Dismiss, filed pursuant to Fed. R. Civ. P. 12(b)(1), (2), (3), and (6) states as follows:

## I. INTRODUCTION

This lawsuit is Plaintiff Tomasello's second improper attempt to collaterally attack the order of a United States District Court Judge for the Eastern District of Virginia, granting Defendants' Motion for Summary Judgment. (Exhibit 1)[1] Ms. Tomasello did not appeal Judge Ellis' order or the dismissal of the five-count employment discrimination and retaliation case. Instead, Ms. Tomasello retained Mr. McMahon and elected to file a second suit in the Circuit Court of Fairfax County arising out of the same conduct. Defendants filed a Plea in Bar, asserting the claims were barred by the doctrine of *res judicata*. (Exh. 2).  The Defendants also filed a demurrer, seeking to dismiss the claims for failure to state a claim for relief. As outlined more fully below, the Circuit Court of Fairfax County ruled on the Demurrer to the Second Amended Complaint and Ms. Tomasello's case was dismissed with prejudice by Judge Kassabian on February 17, 2017. (Exhs. 5 & 6). Ms. Tomasello now contends Jamie Greenzweig ("Greenzweig"), Assistant County Attorney for Fairfax County, Virginia, conspired with her client, Michael T. Reilly ("Reilly"), and Ms. Tomasello's local counsel, Hasina Lewis ("Lewis"), to have the case dismissed.[2] Defendants move this court to dismiss the Complaint for lack of personal jurisdiction, improper venue, lack of subject matter jurisdiction and the failure to state a plausible claim for relief.

---

[1] This court may take judicial notice of pleadings and orders from the underlying actions in U.S. District Court for the Eastern District of Virginia and in the Circuit Court of Fairfax County without converting this motion to a motion for summary judgment. <u>Slate v. Public Defender Serv.</u>, 31 F. Supp. 3d 277, 288 (D.D.C. 2014) (noting the court may properly consider documents central to the plaintiff's claims or that are a matter of public record on a motion to dismiss).

[2] Although McMahon is also a Plaintiff, McMahon does not assert a cause of action against Defendants Greenzweig or Reilly. The only claim asserted by McMahon is Count III, against Defendant Lewis.

## II. BACKGROUND

Tomasello is a firefighter in the Fairfax County Fire Department. On January 26, 2015, Tomasello, by counsel, filed a Complaint for Discrimination against Fairfax County, Virginia in the United States District Court for the Eastern District of Virginia. (Exh. 7). Tomasello filed an Amended Complaint on March 25, 2015. (Exh. 8). Fairfax County moved for summary judgment, which the Court granted on January 13, 2016. (Exhs. 1 and 9). No appeal was filed.

Tomasello filed a Complaint in the Circuit Court of Fairfax County and requested service on July 15, 2016 (hereinafter the "*Tomasello*" matter). (Exh. 10). The *Tomasello* matter asserted three counts (I – Civil Conspiracy, II – Intentional Interference with an Employment Contract and III – Intentional Infliction of Emotional Distress) against multiple defendants, including Deputy Chief Reilly. (*See* Exh. 12). Defendants filed a Demurrer. Defendants' Demurrer sustained with leave to file an amended complaint on October 14, 2016. (Exh. 11). Plaintiff filed an Amended Complaint on January 4, 2017. (Exh. 12). Defendants filed a demurrer. Defendants filed a Plea in Bar on February 3, 2017. (Exh. 2). The demurrer hearing was scheduled for January 6, 2017. (Exh. 5). In order to allow Plaintiff to file a response, the court on its own motion, extended the hearing to January 20, 2017. Id. On January 20, 2017, no local counsel appeared. The Court overruled the Demurrer as to Counts I and II and sustained the demurrer without leave to amend as to Count III. Id.

On January 27, 2017, Defendants filed a Motion to Reconsider the Court's Order of January 20, 2017. Id. The Court entered a Suspending Order in the matter on January 30, 2017. (Exh. 13). The suspending Order allowed Plaintiff's counsel to respond to the Motion to Reconsider by February 3, 2017. Plaintiff did not file a response. (Exh. 5). Upon consideration of the arguments presented in Defendants' Motion to Reconsider, the court determined the Amended

Complaint failed to state a cause of action under Virginia law. Id. A final order dismissing the case with prejudice was entered on February 17, 2017. (Exh. 6). Plaintiff did not appeal this Order.

On March 8, 2017, Patricia Tomasello filed a *Pro Se* Application to Reinstate her Lawsuit Against Michael Reilly, et al. (Exh. 14). Ms. Tomasello argued, as she does in the instant case, that the County Attorney "engaged in unethical and criminal conduct, and has obstructed justice in the process." Id. Ms. Tomasello did not set the motion for a hearing or otherwise alert the court to the fact it had been filed. On April 5, 2017 the motion was denied for lack of jurisdiction. (Exh. 15).

Following the dismissal of the case, Jamie Greenzweig filed a Complaint in the Office of Disciplinary Counsel in the District of Columbia. (Exh. 16) A complaint was also filed with the Virginia State Bar Disciplinary Board, which sanctioned Mr. McMahon for his unethical conduct. (Exh. 17). McMahon was suspended on an interim basis based upon discipline imposed in Virginia, by the District of Columbia Court of Appeals Board of Professional Responsibility. (Exh. 18).

### III. LEGAL STANDARD

### A. Personal Jurisdiction

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(2), a plaintiff bears the burden of establishing a basis for exercising personal jurisdiction over a defendant. Crane v. New York Zoological Soc., 894 F.2d 454, 456 (D.C. Cir. 1990). "In determining whether such a basis exists, factual discrepancies appearing in the record must be resolved in favor of the plaintiff." Id. The Court "need not accept inferences drawn by plaintiffs if such inferences are unsupported by the facts." Livnat v. Palestinian Auth., 851 F.3d 45, 57 (D.C. Cir. 2017). "Mere conclusions or 'bare

allegation[s]' do not constitute the *prima facie* case for jurisdiction that this standard requires." <u>Fauzi v. Al Jazeera Media Network</u>, 273 F. Supp. 3d 182, 186 (D.D.C. 2017).

### B. Venue

"The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406. The question of whether venue is improper is governed by 28 U.S.C. § 1391. "In assessing a motion for improper venue, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." <u>Fam v. Bank of Am. NA (USA)</u>, 236 F. Supp. 3d 397, 405 (D.D.C. 2017).

### C. Subject Matter Jurisdiction

"The presence of subject matter jurisdiction is a threshold issue that the court must consider before the merits of the case." <u>Moore v. Idealease of Wilmingon</u>, 465 F. Supp. 2d 485, 486 (E.D.N.C. 2006). The plaintiff bears the burden of demonstrating jurisdiction exists. <u>Thomson v. Gaskill</u>, 315 U.S. 442, 446 (1942). "If the court does not receive evidence concerning the issue of subject matter jurisdiction, it should view the alleged facts in the complaint in the light most favorable to the plaintiff." <u>Moore</u>, 465 F. Supp. 2d at 486.

### D. Failure to State a Plausible Claim

A Complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'" <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotations omitted). Although "detailed factual allegations" are not required to withstand a Rule 12(b)(6) motion, a complaint must offer "more than labels and conclusions" to provide "grounds"

of "entitle[ment] to relief." <u>Twombly</u>, 550 U.S. at 555. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 570).

## IV. ARGUMENT

## A. PERSONAL JURISDICTION

This court lacks personal jurisdiction over Defendants Greenzweiz and Reilly because they are both domiciled in Virginia and the contacts alleged in the Complaint do not satisfy due process requirements to permit this court to exercise specific or conspiratorial jurisdiction.

### i. Legal Principles

"This court's exercise of personal jurisdiction over nonresidents must satisfy both the Due Process Clause and D.C.'s long-arm statute." <u>Cockrum v. Donald J. Trump for President, Inc.</u>, 319 F. Supp. 3d 158, 173 (D.D.C. 2018) (citing <u>Lemon v. Kramer</u>, 270 F. Supp. 3d 125 (D.D.C. 2017)). To satisfy due process requirements "a plaintiff must demonstrate that there are 'minimum contacts between the defendant and the forum establishing that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" <u>Swecker v. Midland Power Coop.</u>, 253 F. Supp. 3d 274, 278 (D.D.C. 2017). This court may exercise either general or specific jurisdiction. "A court with general jurisdiction may hear *any* claim against that defendant." <u>Brystol-Myers Squibb Co. v. Superior Court of California, San Francisco Cty.</u>, 137 S. Ct. 1773, 1780 (2017). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." <u>Goodyear Dunlop Tires Operations, S.A. v. Brown</u>, 564 U.S. 915, 924 (2011).

In order to meet the test for specific jurisdiction, "the plaintiff must allege some specific facts evidencing purposeful activity by the defendants in the District of Columbia by which they invoked the benefits and protections of the laws of the District of Columbia." <u>Bigelow v. Garrett</u>,

299 F. Supp. 3d 34, 44 (D.D.C. 2018). "Specific jurisdiction requires that a plaintiff's suit arise

out of or relate 'to the defendant's contacts with the forum.'" <u>Cockrum</u>, 319 F. Supp. 3d at 175

(citing <u>Brytol-Myers Squibb Co.</u>, 137 S. Ct. at 1780). "Specific jurisdiction is tied to each

defendant and to each claim." <u>Id.</u> "For this Court to exercise specific jurisdiction over defendants

their 'suit-related conduct must create a substantial connection with' the District." <u>Id.</u> (citing

<u>Walden v. Fiore</u>, 571 U.S. 277 (2014). Suit-related conduct is determined by the allegations of the

complaint. Therefore, to determine whether this court may exercise specific jurisdiction over the

defendants, this court "must determine from the allegations in the complaint what suit-related

conduct by defendants, in furtherance of the conspiracies, took place in D.C." <u>Id.</u>

Plaintiffs also rely upon the theory of conspiratorial jurisdiction. As explained in <u>Cockrum</u>:

Some cases in this Circuit, predating the Supreme Court's 2014 decision in *Walden v. Fiore* discussed a conspiracy theory of personal jurisdiction, and those cases required "a prima facie showing of (1) a conspiracy (2) in which the defendant participated and (3) a co-conspirator's overt act within the forum, subject to the long-arm statute and in furtherance of the conspiracy." *Yourning Jin v. Ministry of State Sec.*, 335 F. Supp. 2d 72, 78 (D.D.C. 2004) (footnote omitted); *FC Inv. Group LC v. IFX Mkts., Ltd.*, 529 F.3d 1087, 1096, 381 U.S. App. D.C. 383 (D.C. Cir. 2008); *World Wide Minerals, Ltd. v. Republic of Kazakhstan*, 296 F.3d 1154, 1168, 353 U.S. App. D.C. 147 (D.C. Cir. 2002).

In *Yourning Jin v. Ministry of State Security*, Judge Urbina presciently noted:

without [imposing additional requirements besides the three listed above], one might wonder what happened to the due process requirement regarding "the foreseeability that is critical to due process analysis . . . that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there" In fact, it is not entirely clear whether the doctrine of conspiracy jurisdiction seeks to sidestep an explicit due process analysis altogether or whether due process is the second step in the analysis that begins with the three elements listed above.

335 F. Supp. 2d at 79 (citations omitted). In *Yourning Jin*, Judge Urbina held that "jurisdiction based on the three traditional elements of conspiracy jurisdiction alone violates due process. Personal jurisdiction, even if based on conspiracy, requires purposeful availment." *Id.* at 80. However, he noted that one way to reconcile

conspiratorial jurisdiction with due process would be to "require another element for conspiracy jurisdiction: the defendant's awareness or knowledge of the co-conspirator's acts in the forum." *Id.* at 79.

319 F. Supp. 3d at 185. Cockrum goes on to explain that the Supreme Court cast doubt on a broad-reaching theory of conspiratorial jurisdiction in Walden, 571 U.S. at 291 ("it is the defendant, not the plaintiff or third parties, who must create contacts with the forum State"). After Walden, courts rarely exercise conspiratorial jurisdiction and D.C. Circuit "requires that the plaintiff 'plead *with particularity* the conspiracy as well as the *overt acts within the forum* taken in furtherance of the conspiracy' in order to establish conspiracy jurisdiction over the defendant." Cockrum, 319 F. Supp. 3d at 185 (citing EIG Energy Fund XIV, L.P. v. Petroleo Brasileiro S.A., 246 F. Supp. 3d 52, 91 (D.D.C. 2017)). Therefore, to establish personal jurisdiction under a conspiratorial jurisdiction theory in the D.C. Circuit, Plaintiff must allege the Defendants knew of the co-conspirator's act in the forum, and allege that the acts in the forum were in furtherance of the conspiracy.

### ii. Analysis

Plaintiffs contend this court can assert personal jurisdiction over Greenzweig under D.C.'s long-arm statute, D.C. Code § 13-423 because "she transacted business in this jurisdiction by calling McMahon's law firm multiple times, sending faxes to his office to propose court dates, and filing a bar complaint against him in this jurisdiction." (Comp. ¶ 8). Plaintiffs contend this court can assert personal jurisdiction over Reilly because

> based upon information and belief, Reilly has visited this jurisdiction on a number of occasions during the last twenty (20) years. There are various entities located in Washington D.C. which advocate on behalf of firefighters . . . . He has met with officials from these entities, attended seminars sponsored by different fire departments, and learned new technology concerning safety on the job. In addition he transacted business in this district via his attorney agent, Greenzweig, based on the business she conducted in this jurisdiction.

Comp. ¶ 9. Further, Plaintiffs contend this court can "invoke the doctrine of civil conspiracy jurisdiction" to assert jurisdiction over Reilly and Greenzweig "based on overt acts committed in this jurisdiction by Lewis and Greenzweig." (Comp. ¶ 10). The overt actions alleged include (1) Greenzweig's telephone call to Attorney Jameson Fox ("Fox") in D.C. (Comp. ¶ 21), (2) Greenzweig's phone call to Attorney McMahon in D.C. (Comp. ¶ 23), (3) Greenzweig's phone call to Attorney Joshua Erlich in Virginia (Comp. ¶ 27), (4) Lewis' action of traveling to D.C. to negotiate a contract with McMahon, (5) Greeenzweig's faxes to McMahon regarding motions and hearings (Comp. ¶ 33). These allegations fail to satisfy the requirements of general or specific jurisdiction.

a. <u>Greenzweig's Lack of Contacts</u>

This court does not have general jurisdiction over Greenzweig because she is not domiciled in the District of Columbia and there are no allegations to otherwise support general jurisdiction. This court does not have specific jurisdiction over Greenzweig because Greenzweig's alleged suit-related conduct in the District of Columbia fails to demonstrate the minimum contracts required by due process.

> To establish personal jurisdiction under Section 13-423(a)(1) of the District of Columbia's long-arm statute, a plaintiff must demonstrate that: (1) the defendant transacted business in the District of Columbia; (2) the claim arose from the business transacted in the District; (3) the defendant had minimum contacts with the District; and (3) the Court's exercise of personal jurisdiction would not offend 'traditional notions of fair play and substantial justice.

<u>Doe v. Chiquita Brands Int'l, Inc.</u>, 285 F. Supp. 3d 228, 233 (D.D.C. 2018) (citations omitted). Greenzweig's relevant contacts with the District of Columbia are (1) a phone call to Fox, (2) a

phone call to McMahon and (3) faxes to McMahon.[3] In order to be "suit-related" conduct, these actions must have been taken in furtherance of the alleged conspiracy "to obstruct justice in the *Tomasello* case." Based on the Complaint, the alleged conspiracy between Greenzweig and Reilly began "shortly after the *Tomasello* lawsuit was filed in Fairfax County Circuit Court in the Spring of 2016." (Comp. ¶ 19).

The "first overt act" alleged in the Complaint is Greenzweig's call to Fox. The Complaint alleges that in the call, Greenzweig "threatened Fox and told him that unless he dismissed the case immediately, that she would file a motion for sanctions and a bar complaint against him." (Comp. ¶ 21). The second "overt act" is a telephone call to McMahon one week later. (Comp. ¶ 23). The third "overt act" is the transmission of "approximately 12" faxes Plaintiffs contend "were important because they misled McMahon into thinking that Lewis had already agreed to those dates, and would be available to attend important hearings coming up in the case." (Comp. ¶ 30). Under Virginia Rules, Greenzweig was required to certify she made a "reasonable effort to confer before giving notice of a motion to resolve the subject of the motion and to determine a mutually agreeable hearing date and time." Va. Sup. Ct. R. 4:15(b). This obligation attaches to any motion, including a motion for sanctions under Va. Code § 8.01-271.1 and is consistent with the requirement to confer with counsel prior to filing a Rule 11 motion for sanctions under the Federal Rules of Civil Procedure. Additionally, Virginia Rules require that any notice, motion or brief filed

---

[3] Greenzweig's call to Erlich, alleged as an overt act in Comp. ¶ 27, is not relevant to this analysis because that was not a contact with the forum state. Bristol-Myers Squibb Co., 137 S. Ct. at 1780 (noting that conduct that may be probative to the existence of a conspiracy is not relevant to conspiratorial jurisdiction unless it is in the forum).

Greenzweig's bar complaint in the District of Columbia was filed *after* the Fairfax Circuit Court dismissed the *Tomasello* case with prejudice. (Exh. 16) Therefore, because the claimed injury is the dismissal of the *Tomasello* case with prejudice, it is not appropriate to consider the filing of the bar complaint in determining specific jurisdiction. Cockrum, 319 F. Supp. 3d at 181 ("courts should determine specific jurisdiction pertaining to civil conspiracies by examining the agreement and the overt acts that led to the plaintiff's injury"). This court may consider the D.C. Bar Complaint attached as Exhibit 16 because it is central to the Complaint. Slate, 31 F. Supp. 3d at 288.

with the court be served on all counsel. Va. Sup. Ct. R. 4:15(c). As set forth more fully below, there is nothing improper in Greenzweig's actions. To the contrary, her actions of calling to meet and confer regarding a motion and providing copies of motions and notices were mandatory under Virginia Rules and thus were not "suit-related" because they are not in furtherance of the alleged conspiracy to obstruct justice. See Second Amendment Foundation v. United States Conference of Mayors, 274 F.3d 521, 523 (D.C. Cir. 2001) (holding that allegations that Mayors met in D.C. and discussed litigation strategies and gun related legislation fell far short of a prima facie showing necessary to establish personal jurisdiction because there were insufficient allegations to demonstrate those discussions were in furtherance of the conspiracy as alleged by the plaintiffs).

Additionally, even if this court determines the two phone calls and twelve faxes to counsel of record are "suit-related," these actions fail to satisfy the due process minimum contacts requirements. It offends traditional notions of fair play and substantial justice to suggest that a Virginia attorney's compliance with mandatory Virginia rules, in a case pending in a Virginia court to (1) meet and confer before filing a motion in Virginia and (2) provide copies of pleadings filed in Virginia to all counsel, would subject the Virginia attorney to  the risk of being haled into court in the District of Columbia, simply because opposing counsel's office is located in the District of Columbia. Although the calls were *received* in the District of Columbia, there are no allegations they were *made from* the District of Columbia. See Charlton v. Mond, 987 A.2d 436 (D.C. 2009) (finding no basis to exercise personal jurisdiction under D.C. Code § 13-423(a) based on a phone call originating from Maryland, even though the injury was sustained in the District of Columbia). Further, phone calls are generally insufficient to confer jurisdiction. See Harris v. Omelon, 985 A.2d 1103 (D.C. 2009) (affirming dismissal for lack of personal jurisdiction where defendant's only connection with the District of Columbia was a single phone call); Cockrell v. Cumberland

Corp., 458 A.2d 716, 718 (D.C. 1983) ("We would be hard-pressed to conclude on this record that a few letters and phone calls from Virginia to the District amounted to transacting business in the District."). Further, "[i]t is now well-settled that the 'transacting business' provision of [section 13-423(a)(1)] embraces those contractual activities of a nonresident defendant *which cause a consequence here*" Cockrell, 458 A.2d at 718. In this case, Ms. Tomasello is a Virginia resident and any harm flowing from the dismissal of her case pending in Virginia would have been suffered in Virginia. Thus, because the phone calls and fax messages at issue did not result in a harm to Ms. Tomasello in the District of Columbia, those contacts cannot form the bases for jurisdiction under D.C. Code § 13-423(a)(1).[4]

Likewise, there are insufficient contacts to confer personal jurisdiction through a "conspiratorial jurisdiction" theory. Plaintiff contends that Lewis' actions of travelling to the District of Columbia to negotiate "a contract with McMahon to work on the *Tomasello* case" is an "overt act" that should be considered in evaluating whether this court has jurisdiction over Greenzweig. (Comp. ¶ 28). However, there are no allegations that this was an overt act *in furtherance of the conspiracy*. There are no allegations that Lewis, Greenzweig, and Reilly had created a conspiracy prior to Lewis' engagement as local counsel. To the contrary, the Complaint contends Lewis joined the conspiracy after Greenzweig contacted her to threaten a motion for sanctions. (Comp. ¶ 31). Alleged co-conspirator's conduct *prior to joining* the conspiracy cannot be in furtherance of the conspiracy and is therefore irrelevant to this court's personal jurisdiction analysis. See Cockrum, 319 F. Supp. 3d at 185-186. Further, there are no allegations that Greenzweig and Reilly *knew* Lewis was travelling to the District of Columbia for the purpose of

---

[4] Paragraph 8 of the Complaint relies upon this provision of the statute to support jurisdiction. ("This Court can assert personal jurisdiction over Greenzweig under D.C.'s long-arm statute (D.C. Code § 13-423) because she transacted business in this jurisdiction by calling McMahon's law firm multiple times, sending faxes to his office to propose court dates, and filing a bar complaint against him in this jurisdiction.")

entering into an agreement to serve as local counsel in furtherance of the conspiracy to obstruct justice, as required in D.C. Circuit. Id. at 185. ("the D.C. Circuit requires that the plaintiff 'plead with particularity the conspiracy as well as the overt acts within the forum taken in furtherance of the conspiracy'' . . . "a plaintiff who seeks to establish jurisdiction over a defendant based on a co-conspirator's contacts must plead, at a minimum, that the defendant *knew* his co-conspirator was carrying out acts in furtherance of the conspiracy *in the forum*") (citations omitted).

b. Reilly's Lack of Contacts

As it relates to Reilly, Plaintiff appears to present three theories in support of jurisdiction: general jurisdiction, specific jurisdiction based on an agency relationship with Greenzweig, and conspiratorial jurisdiction.[5]  This court lacks personal jurisdiction over Reilly under each theory.

First, personal jurisdiction under an agency theory or conspiratorial theory fail because, as argued above, the exercise of personal jurisdiction over Greenzweig based on the telephone calls and faxes she sent to McMahn is not permitted under D.C. Code § 13-423 and does not comport with due process. Additionally, Lewis' actions in the District of Columbia prior to her involvement in the alleged conspiracy cannot create jurisdiction. The exercise of jurisdiction over Reilly based on Greenzweig's and Lewis' contacts with the forum is inconsistent with notions of fair play and substantial justice as he has not taken any purposeful actions to avail himself of the jurisdiction of this court. Further, there are no allegations that he knew Greenzweig or Lewis were taking specific actions in furtherance of the alleged conspiracy in the forum. Although D.C. Code § 13-423 permits courts to exercise personal jurisdiction based on a person's direct actions or those of an agent,[6] in Walden, the Supreme Court held that "it is the defendant, not the plaintiff or third parties,

---

[5] There are no allegations that Reilly directly engaged in any overt acts in furtherance of the alleged conspiracy in the forum. Therefore, there are no allegations to support specific jurisdiction based on Reilly's own conduct.

[6] Typically, for the purpose of assessing jurisdiction over an entity.

who must create contacts with the forum state." 134 S. Ct. at 1126. Therefore, the contacts alleged in the complaint do not confer specific or conspiratorial jurisdiction over Reilly.

In an effort to demonstrate general jurisdiction,[7] Plaintiffs allege Reilly has visited D.C. "on a number of occasions during the last twenty (20) years." (Comp. ¶ 9). Plaintiffs further allege Reilly has "met with officials from [various D.C. entities that support Firefighters], attended seminars sponsored by different fire departments, and learned new technology concerning safety on the job." Id. These vague allegations are insufficient, even if accepted as true, to create general jurisdiction. There are only a "limited set of affiliations with a forum [that] will render a defendant amendable to all-purpose jurisdiction there." Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." Id. (citations omitted). In Daimler, the Supreme Court rejected plaintiff's argument that the court could exercise general jurisdiction over a foreign corporation where contacts were "continuous and systematic" and clarified that the test is "whether [a] corporations 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State." Id. Although Defendants submit that the test for individuals is the place of domicile, even if this court applied a continuous and systematic analysis, the allegations in the complaint fail to demonstrate Reilly is "essentially at home" in the District of Columbia. Visiting the forum occasionally for various personal and professional purposes over the course of twenty years does not create general jurisdiction.

Defendants' motion to dismiss should be granted because this court lacks personal jurisdiction over Greenzweig and Reilly.

---

[7] As there are no allegations that Tomesello's injury arises out of Reilly's personal visits to the District of Columbia or professional conferences, Defendants assume these allegations are intended to support general jurisdiction.

### B. VENUE

Venue is improper in the District of Columbia because all Defendants are not residents of the District of Columbia, a substantial part of the events or omissions giving rise to the claim did not occur in the District of Columbia, and the Eastern District of Virginia is a judicial district where the action may be brought under 28 U.S.C. § 1391(b)(2).

### i. Legal Principles

28 U.S.C. § 1391(b) provides:

Venue in general. A civil action may be brought in

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions  giving rise the claim occurred, or a substantial part of property that is the  subject  of  the action is situated; or

(2) if there is no district in which any action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

"[W]here 'the claim arose' should . . . be ascertained by advertence to the events having operative significance in the case, and a commonsense appraisal of the implications of those events for accessibility to witnesses and records." Lamont v. Haig, 590 F.2d 1124, 1134 (D.C. Cir. 1978). "Peripheral and tangential events occurring in the district will not establish venue." Cockrum, 319 F. Supp. 3d at 189. "'[P]laintiffs must show that a considerable portion of the events took place in their chosen forum.'" Id. (citing Perimutter v. Varone, 59 F. Supp. 3d 107, 110 (D.D.C. 2014)).

### ii. Analysis

Based on the allegations in the Complaint, 28 U.S.C. § 1391(b)(1) is inapplicable because Defendants Greenzweig and Reilly are residents of Virginia. Therefore, all Defendants are not residents of the District of Columbia. Under 28 U.S.C. § 1391(b)(2), venue would only be

appropriate in the District of Columbia if a "substantial part" of the events giving rise to the claim occurred in the District of Columbia. The alleged events that give rise to the claim occurred in Virginia. Plaintiff submits Defendants obstructed justice by convincing Lewis not to appear for hearings in Virginia. The case at issue was pending in Virginia. Defendant Lewis did not appear for hearings in Virginia and a Virginia Circuit Court dismissed the case. The alleged conspiracy to obstruct justice took place in Virginia, as Lewis' office is in Virginia, and any actions or conversations between Greenzweig and Reilly occurred in Virginia. The few contacts discussed above – two telephone calls, 12 faxes, one meeting, and a bar complaint filed after the case was dismissed – are not a substantial part of the events that give rise to Plaintiffs' claims. Further, there are no allegations that venue is proper because a substantial part of the events occurred in the District of Columbia. Instead, Plaintiffs allege venue is proper because Defendants will not be inconvenienced, a plaintiff's forum selection should be respected, and the District of Columbia is the nearest *neutral* forum. These are not proper basis for venue. See Atl. Marine Constr. Co. v. United States Dist. Court, 571 U.S. 49, 55 (2013) (noting that venue shall be governed by § 1391 in *all* civil actions). Therefore, venue is improper.

Venue is proper in the Eastern District of Virginia because a substantial part of the events that give rise to the claim occurred in Fairfax County, Virginia. Defendants move for dismissal for lack of venue because, based on the allegations in the Complaint, transfer to the Eastern District of Virginia would not promote the interest of justice. Mikkilineni v. Pa., 2003 U.S. Dist. LEXIS 13669, * 24 (D.D.C. 2003) (dismissing case for lack of venue after finding a substantial part of the events did not occur in the District of Columbia, venue exists in the Western District of Pennsylvania, and noting that plaintiff did not move for a transfer "hoping to find a more

sympathetic judge" in the District) (citing Prof'l Managers' Ass'n v. United States, 761 F.2d 740,

744 (D.C. Cir. 1985) (discussing Congress' disdain for forum shopping)).

### C. LACK OF SUBJECT MATTER JURISDICTION

This court lacks subject matter jurisdiction over Counts I, II and V because federal district

courts do not have appellate jurisdiction over state court judgments.

### i. Legal Principles

The *Rooker-Feldman* doctrine stands for the principle that, of all the federal courts, only

the United States Supreme Court has appellate jurisdiction over state court judgments, and a

litigant in state court must find a state court remedy, or obtain relief from the Supreme Court.

Rooker v. Fidelity Trust, Co., 263 U.S. 413, 415 (1923); D.C. Ct. App. v. Feldman, 460 U.S. 462,

486-87 (1983); Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).   As recognized by

the Supreme Court, "a state-court decision is not reviewable by lower federal courts. . ." Skinner

v. Switzer, 131 S. Ct. 1289, 1291 (2011). Specifically, the doctrine applies in "cases brought by

state-court losers complaining of injuries caused by state-court judgments rendered before the

district court proceedings commenced and inviting district court review and rejection of those

judgments." Exxon Mobile Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The

question one must ask when determining whether the *Rooker-Feldman* doctrine applies is: does

the plaintiff that lost in state court seek review of a state court judgment that hurt him. *Sheetz v.*

*Norwood*, 608 Fed. Appx. 401, 404 (7th Cir. 2015).   If the injury complained of arises from the

state court's judgment, *Rooker-Feldman* compels this Court to find that there is no jurisdiction.

Bianchi v. Rylaarsdam, 334 F.3d 895, 900 (9th Cir. 2004).

### ii. Analysis

In this case, the injury complained of is the dismissal of Tomasello's case in Fairfax County Circuit Court. Plaintiff contends the case was dismissed because (1) Tomasello could not file a timely response to Greenzweig's Motion for Reconsideration without local counsel, and (2) Tomasello could not present argument to oppose Greenzweig's Motion for Reconsideration without local counsel.[8] (Comp. ¶ 38). Implicit in this argument is the assumption that dismissal was wrong, and constituted a deprivation of her rights, because the *Tomasello* Complaint was meritorious.

Judge Kassabian, however, issued an order outlining the basis for his ruling on the merits. (Exh. 5). The case was not dismissed for failure to prosecute, or as a sanction for repeated failures to appear. Thus, in order to conclude the plaintiff was deprived of a constitutional right to "file and prosecute" her claim, this court would have to conclude her complaint was meritorious, dismissal was improper, and Defendants' wrongful actions caused her to be deprived of her right of recovery. Thus, this case falls squarely within *Rooker-Feldman* because Plaintiff contends the case was wrongly dismissed due to her inability to present legal arguments to the court. Davani v. Va. Dep't of Transp, 434 F.3d 712, 719 (4th Cir. 2006) ("A claim seeking redress for an injury caused by the state-court decision itself -- even if the basis of the claim was not asserted to the state court – asks the federal district court to conduct an appellate review of the state-court decision").  "Similarly, a party 'may not escape the jurisdictional bar of *Rooker-Feldman* by merely refashioning its attack on the state court judgments as a [civil rights] claim.'" Moore v. Idealease of Wilmington, 465 F. Supp. 2d 484, 488 (E.D.N.C. 2006) (dismissing plaintiff's claims under *Rooker-Feldman* doctrine because plaintiff failed to allege any injury independent from the state-court action).

---

[8] *See also* Comp. ¶ 95-96 (alleging Lewis engaged in malpractice by failing to secure pro hac vice admission for Mr. Mahaon and failing to appear for hearings, and arguing these actions were the proximate cause of the dismissal of the case) Comp. ¶ 82 (because McMahn failed to oppose the motion, Judge Kassabian "had no choice" but to dismiss the case)

In <u>Moore</u>, the plaintiff alleged the defendants abused the state court adjudicatory process by "tampering with witnesses and jurors, withholding and misrepresenting facts, and conspiring with the judges." <u>Id.</u> at 490. The plaintiff sought, in substance, for the court to set aside the judgment as illegal because it was obtained in violation of her civil and constitutional rights. <u>Id.</u> That is precisely what Tomasello is seeking in this case. As part of her damages claimed in this action, Tomasello seeks to recover the "thousands of dollars in damages for the malicious, intentional, and discriminatory acts perpetrated by her colleagues of FCFD." (Comp. ¶ 69); *See also* (Comp. ¶ 92).  Clearly, Plaintiff seeks to set aside Judge Kassabian's ruling dismissing her case for "malicious, intentional and discriminatory acts perpetrated by her colleagues of FCFD" and to recover damages for those alleged injuries. Just as in <u>Moore</u>, "the plaintiff is a state-court loser seeking redress in federal court for an injury caused by a state-court judgment entered before the federal proceedings commenced." <u>Id.</u> at 491.  If this court were to proceed on the merits it would necessarily have to sit in review of Judge Kassabian's February 6, 2017 order. "If plaintiff wants such relief from the state-court judgment, she must find it in state court." <u>Id.</u> Therefore, this case must be dismissed for lack of subject matter jurisdiction.


### D. FAILURE TO STATE A CLAIM

The Complaint fails to state a plausible claim for relief against Defendants Greenzweig and Reilly in Counts I, II or V. There are no allegations that support a cause of action against Reilly. He was a defendant in a civil suit represented by an Assistant County Attorney and the allegations fail to demonstrate the existence of a conspiracy to engage in tortious conduct.  The alleged violations of ethical rules and the cited Virginia statutes do not give rise to a legal duty or create a

common law cause of action or to support a civil conspiracy. Plaintiff's claim under 42. U.S.C. §1985(2) must be dismissed because the alleged "obstruction" occurred in a state court, not a "Court of the United States" as defined by 28 U.S.C.S. § 451, and there are no allegations that the alleged interference was motivated to deprive Tomasello equal protection under the law.  The allegations against Greenzweig fail to state a plausible claim for relief because there are no allegations to support any federal civil rights violation. Further, should this court determine there was a deprivation of a constitutionally protected right, Defendant Greenzweig is entitled to qualified and/or absolute immunity for all federal claims, and sovereign immunity for all state claims. Additionally, the claims are barred by the doctrine of *res judicata*.

### i. The Allegations Fail to State a Plausible Claim Against Reilly.

There are no allegations to support a cause of action against Reilly. The Complaint alleges he was a civil defendant who desired the dismissal of the case and was frustrated by the fact that Tomasello filed a second lawsuit after the case in the Eastern District of Virginia had been dismissed. This conduct does not support a claim in tort or the violation of any constitutional right. By common sense, analysis of the legal authority, dismissal of the Fairfax case, and now this frivolous action, dismissal is the remedy this court should impose.

Count V alleges both Greenzweig and Reilly intentionally interfered with Plaintiff's contract with Lewis. The necessary elements to establish a prima facie case are: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." Dunlap v. Cotton Transmission Sys., LLC, 28 Va.

207, 216 (2014).[9] There are no allegations that Reilly took any action to interfere with the contractual relationship.[10] Additionally, the only alleged damage is the dismissal of the *Tomasello* suit, which was **not** caused by Lewis' non-appearance but was instead a result of Judge Kassabian's consideration of the law and allegations in the Amended Complaint. (Exh. 5). Therefore, the Complaint fails to state a claim for tortious interference with contract against Reilly.[11]

Tomasello's remaining claims against Reilly rest upon the existence of a civil conspiracy.[12] "It is well established that there is no recognized independent tort action for civil conspiracy in the District of Columbia." Wiggins v. Phillip Morris, Inc., 853 F. Supp. 470, 483 (D.D.C. 1994). Civil conspiracy relies upon the "performance of some underlying tortious act." Id. (citations omitted). "Under District of Columbia law, the elements of a claim for civil conspiracy are 'an agreement to do an unlawful act or a lawful act in an unlawful manner; an overt act in furtherance of the agreement by someone participating in it; and injury caused by the act.'" Id. (citing Okusami v. Psychiatric Institute of Washington, Inc., 959 F.2d 1062, 1066 (D.C. Cir. 1992)). "[I]n order to state a cause of action, the plaintiff need only allege, **in addition to negligence**, an agreement to

---

[9] Defendants submit Virginia law applies to the tort claims. *See* Choice of Law Analysis below.  The elements under District of Columbia law are identical. "To make out a prima facie case of intentional interference with contractual or business relations, a plaintiff must prove: (1) existence of a valid contractual or other business relationship, (2) the defendant's knowledge of the relationship, (3) intentional interference with that relationship by the defendant, and (4) resulting damages." Armstrong v. Thompson, 80 A.3d 177, 190 (2013).

[10] Defendants understand the contract was between Lewis and McMahon and do not contest Tomasello's standing as an intended third party beneficiary at this time.

[11] *See also* Sovereign Immunity argument below. Deputy Chief Reilly is entitled to the defense of sovereign immunity because he was sued in his capacity as Deputy Fire Chief for the Fairfax County Fire Department and was at all times acting in the scope of his employment.

[12] Defendants do not understand the Complaint to allege a conspiracy to tortuously interfere with contractual relations in Count V. "The object of the conspiracy was to obstruct justice and dismiss [the *Tomasello*] lawsuit." (Comp. ¶ 68). There are no allegations that the parties conspired to interfere with the contract. Thus, in order to hold Reilly liable for the tort based on the actions of an alleged co-conspirator, Plaintiff must first demonstrate the existence of a civil conspiracy to "obstruct justice" and that the commission of the tort was in furtherance of the conspiracy.

take part in the negligent conduct." <u>Okusami</u>, 959 F.2d at 1073 (emphasis added). Thus, a civil conspiracy claim requires an alleged breach of a legal duty of care.[13]

The allegations in the Complaint fail to identify a breach of a legal duty owed to Tomasello and, therefore, fail to demonstrate the existence of a civil conspiracy. Neither 42 U.S.C. § 1983 nor § 1985 create substantive rights or obligations. <u>Williams v. Savage</u>, 538 F. Supp. 2d 34, 42 (D.D.C. 2008) (noting these statutes do not create substantive rights but provide remedies).  The Complaint alleges the Defendants violated Va. Code Ann. § 18.2-460A in an effort to demonstrate the existence of a civil conspiracy. (Comp. ¶ 44). Va. Code Ann. § 18.2-460A does not create a private cause of action. <u>Young v. City of Norfolk</u>, 62 Va. Cir. 307, 315 (2003) (noting the statute does not expressly provide authority for private right of action and Virginia authority demonstrates no cause of action for obstruction of justice exists in Virginia). Therefore, a violation of §18.2-460A cannot form the basis of a civil conspiracy claim because it is not tortious conduct. Similarly, alleged violations of Va. Sup. Ct. R. 4:15(b), Va. R. Prof. Cond. 3.4(f) and (j), and Va. Code Ann. § 54.1-3903 do not create private causes of action. <u>See e.g</u>. <u>Caldwell v. Obama</u>, 6 F. Supp. 3d 31, 36 (D.D.C. 2013) ("The oaths that government officials take in assuming their office do not create any private right of action").  Therefore, the Complaint fails to state a plausible cause of action against Reilly under a civil conspiracy theory because there are no allegations of a conspiracy to breach a recognized legal duty. <u>See also</u> <u>Peavey v. Holder</u>, 657 F. Supp. 2d 180, 190 (D.D.C. 2009) (discussing various criminal statutes related to obstruction of justice that do not create private causes of action).

---

[13] Virginia law is the same. <u>See</u> <u>Almy v. Grisham</u>, 273 Va. 68, 80 (2007) (noting a common law conspiracy claim generally requires proof that the underlying tort was committed).

Accordingly, as the Complaint fails to identify the breach of an actionable legal duty, the Complaint fails to demonstrate the existence of a civil conspiracy and fails to state a claim against Reilly.

### ii. The Complaint Fails to State a Claim Under 42 U.S.C. § 1985(2).

Count II must be dismissed because the Complaint failed to allege that the Defendants' actions were motivated by some class-based, invidiously discriminatory animus. <u>Graves v. U.S.</u>, 961 F. Supp. 314, 321-22 (D.D.C. 1997). Plaintiff contends Defendants violated the second clause of § 1985(2). The second clause of § 1985(2) "applies to conspiracies to obstruct the course of justice in state courts." <u>Kush v. Rutledge</u>, 460 U.S. 719, 725 (1983) (explaining the breadth of the statute as to federal courts versus state courts). Claims under the second clause require an "intent to deprive [a person] of equal protection, or equal privileges and immunities." <u>Id.</u> at 726. Thus, the Complaint must allege facts to demonstrate some "racial or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." <u>Id.</u> The conspiracy itself must aim to achieve a deprivation of "the equal enjoyment of rights secured by the law to all." <u>Id.</u> As there are no allegations that the alleged conspiracy between Lewis, Greenzweig and Reilly was motivated by invidious discriminatory animus, the Complaint fails to state a claim and should be dismissed. Further, there are no allegations of a "meeting of the minds" to engage in a conspiracy to obstruct justice *because* of Tomasellos' race, gender, or membership in a protected class. <u>Id.</u> at 320.

### iii. . The Complaint Fails to State a Plausible Claim Under 42 U.S.C. § 1983 (Count I)

#### 1. Legal Principles

42 U.S.C. § 1983 provides:

Every person, who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to

be subjected, any citizen of the United States or other persons within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

This provision provides a remedy for violations of constitutional and statutory rights and is not itself a source of substantive rights. Greenwood v. Peacock, 384 U.S. 808 (1966). To state a claim for relief under § 1983, the plaintiff must show "the conduct complained of was committed by a person acting under color of state law." Parrat v. Taylor, 451 U.S. 527, 535 (1981). A plaintiff must show the conduct in fact deprived them of rights, privileges or immunities secured by the Constitution or laws of the United States. Id.

"Qualified immunity under section 1983 shields a state or local official from personal liability unless his action violated a 'clearly established statutory or constitutional right[] of which a reasonable person would have known.'" Estate of Phillips v. District of Columbia, 455 F. 3d 397 (D.C. Cir. 2006). "A court evaluating a claim of qualified immunity must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all." Id. (citing Wilson v. Layne, 526 U.S. 603, 609 (1999)). The defense of qualified immunity is available to a defendant whose actions are found to be unconstitutional.  Saucier v. Katz, 533 U.S. 194, 206 (2001). In Pearson v. Callahan, 555 U.S. 223, 236 (2009), the court modified the Saucier analysis stating that "[t]he judges of the district courts and the court of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."

The test is one of objective reasonableness, meaning "[i]f officers of reasonable competence could disagree on [the] issue, immunity should  be recognized." Malley  v. Briggs, 475 U.S. 335, 341 (1986).  The defense provides protection to "all but the plainly incompetent." Id. The relevant factual inquiry is whether a reasonable Assistant County Attorney could believe

that her conduct was lawful. <u>Anderson v. Creighton</u>, 483 U.S. 635, 641 (1987). The analysis involves "a more particularized inquiry, focusing on whether a reasonable" Assistant County Attorney, at the time of the acts or actions complained of, " 'could have believed'" her conduct was lawful, "in light of clearly established law and the information" she possessed at the time. <u>Cruey v. Huff</u>, 2010 U.S. Dist. LEXIS 118374 *20 (W.D. Va. Nov. 8, 2019).

To the extent Plaintiff's claims arise from Greenzweig's actions as a county attorney "engaged as a prosecutor," in her conduct before the Fairfax County Circuit Court, the claims should be dismissed on the basis of absolute immunity.[14] Prosecutors have absolute immunity from a civil suit for damages under 42 U.S.C. § 1983. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 430-31 (1976). Absolute immunity "creates a formidable obstacle for a plaintiff seeking to maintain a civil rights action against a [state's] attorney . . . ." <u>Pinaud v. County of Suffolk</u>, 52 F. 3d 1139, 1147 (2d Cir. 1995). Absolute immunity depends on the nature of the function performed not the identity of the actor. <u>Forrseter v. White</u>, 484 U.S. 219 (1988). A county attorney, under certain circumstances, may be afforded absolute immunity. <u>See e.g.</u>, <u>Root v. Liston</u>, 363 F. Supp. 2d 190 (D. Conn. 2005) (holding county attorney's actions of modifying bail bond were entitled to absolute immunity); <u>Wilson v. City of Chanute</u>, 43 F. Supp. 2d 1202 (D.Kan. 1999) (holding county attorney's actions related to the release of a detainee from custody were entitled to absolute immunity); <u>Stepanek v. Delta County</u>, 940 P.2d 364 (1997) (affirming decision of the court of appeals finding that a county attorney filing a petition for temporary guardianship of an at-risk adult is absolutely immune from a cause of action requesting attorneys fees but is not immune from a motion for sanctions).

---

[14] <i>See</i> Comp. ¶ 55 (Attorneys who are engaged as a prosecutor, such as someone like her in [Greenzweig's] position as a County Attorney for Fairfax County, have additional responsibilities under Virginia Rule of Professional Conduct Rule 3.8(b) not to take advantage of an unrepresented defendant.)

### 2. Analysis

Plaintiff fails to state a claim under § 1983 because she was not deprived of a constitutional or federally protected right and the Defendants are entitled to qualified immunity. Tomasello alleges Greenzweig and Reilly "violated her right to prosecute her civil action in Virginia state court." Plaintiff contends

> Tomasello . . . had the right to bring a civil action against her employer, the Deputy Fire Chief, and her colleagues, for damages she sustained as a result of their tortious behavior. *See e.g.*, U.S. Const. Amendments I, XIV. Therefore, she had the right to file and prosecute her action against FCFD . . . without being prevented from doing so because the Defendants . . . obstructed justice in her case.

Comp. ¶ 62. The Complaint does not identify the constitutional right at issue, but alleges that she was deprived of the "right to file and prosecute her action against FCFD" and uses the signal "See, e.g." to refer to the First and Fourteenth Amendments.

### a. No Deprivation of Constitutional Right

The Defendants are not on notice of the alleged constitutional or federally protected right of which plaintiff contends she has been deprived. Defendant submits there is no federally protected right to "prosecute her action against FCFD." Plaintiff filed and prosecuted her claims for discrimination in federal court. She lost and did not appeal the court's decision in granting summary judgment for Fairfax County. Tomesello then retained a new attorney, who was not licensed in Virginia and who elected to file a complaint in Virginia, seeking the same relief for the same underlying conduct. Upon consideration of the merits of the case, Judge Kassabian sustained Defendant's demurrer and the case was dismissed. McMahon's decision to file suit in a state where he is not licensed to practice law, hiss failure to coordinate with local counsel to secure availability for hearings and his decision to forge local counsel's signature on pleadings, rendering them a nullity, are not actions that can be fairly attributed to the Defendants. These actions demonstrate

*McMahon* breached the standard of care and engaged in sanctionable conduct. (Exh. 17). It is not

the Defendants' fault Tomasello's lawyer acted irresponsibly and unethically. Plaintiff elected to

retain McMahon. Plaintiff failed to appeal Judge Kassabian's ruling. Plaintiff failed to take any

action to challenge Judge Kassabian's ruling while the Circuit Court retained jurisdiction over the

case. (Exh. 14). Plaintiff's claims were properly dismissed on the merits in both federal and state

court. Greenzweig's actions in calling local counsel to advise of an intent to file a motion for

sanctions and efforts to schedule hearing dates, consistent with the Virginia Rules, did not result

in the deprivation of the Plaintiff's First or Fourteenth Amendment rights.

i. First Amendment

The allegations in the Complaint fail to demonstrate any deprivation of Tomasello's First

Amendment rights. The First Amendment protects the right of individuals "to petition the

Government for a redress of grievances." U.S. Const., amend. I. Nothing in the First Amendment,

however, entitles a plaintiff to "a favorable disposition of [her] claim." Patchak v. Jewell, 109 F.

Supp. 3d 152, 164 (D.D.C. 2015). "The First Amendment safeguards only a citizen's right to

*express* [her] grievance to a tribunal of competent jurisdiction. Nowhere does 'it guarantee[] a

citizen's right to receive a government response to or official consideration of a petition for redress

of grievances.'" Id. (citing We the People Found, Inc. v. United States, 485 F.3d 140, 141 (D.C.

Cir. 2007) (emphasis in original).

In this case, Tomasello was not deprived of her right to petition. She filed a Complaint in

the Eastern District of Virginia and the case was dismissed on summary judgment. She filed a

Complaint in state court and the Complaint was dismissed on demurrer. The dismissal of her case

is not a deprivation of the right to petition. Patchack, 109 F. Supp. 3d at 164. Further, Virginia's

requirement that attorneys who practice in Virginia tribunals be members of the Virginia bar, or

admitted *pro hac vice* and accompanied by local counsel, is not a deprivation of the right to petition. *See e.g.* <u>N.A. for Advancement of Multijurisdictional Practice v.</u> Berch, 773 F.3d 1037 (9th Cir. 2014) (holding that Arizona's bar "Attorney on Motion" Rule does not deny meaningful access to Arizona courts); *see also* <u>Leis v. Flynt</u>, 439 U.S. 438 (1979) ("There is no right of federal origin that permits [out of state] lawyers to appear in state courts without meeting that State's bar admission requirements."); <u>Doe v. Board on Professional Responsibility of District of Columbia Court of Appeals</u>, 717 F.2d 1424, 1428 (D.C. Cir. 1983) ("State courts, including the courts of the District of Columbia, possess exclusive authority to regulate admission to their respective state bars and bear responsibility for disciplining errant bar members.") Tomasello's and/or her counsel's failure to comply with Virginia rules is not state action, is not a deprivation of the right to petition, and is certainly not attributable to the Defendants. Therefore, the Complaint fails to demonstrate any deprivation of Tomasello's First Amendment rights. Instead, Tomasello's claims should be asserted against her own attorney, for his malfeasance.

ii. <u>Fourteenth Amendment</u>

The Complaint fails to demonstrate a plausible deprivation of Tomasello's Fourteenth Amendment rights.[15] "To maintain a procedural due process claim, a plaintiff must establish that the government has deprived [her] of a protected interest without due process." <u>Caldwell v. Obama</u>, 6 F. Supp. 3d 31, 46 (D.D.C. 2013). "To establish a protected liberty or property interest, the plaintiff must demonstrate that the Constitution or a federal or state statute grants [her] a protected right." <u>Id.</u> Here, the property interest appears to be the damages Tomasello contends she is entitled to based on allegations of discrimination. <u>See</u> (Comp. ¶ 62). Assuming, *arguendo*, that

---

[15] The Complaint fails to indicate whether the plaintiff is pleading a violation of substantive or procedural due process rights. Defendants will address both.

the plaintiff had a legitimate claim of entitlement,[16] she has received sufficient process. "The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." Matthews v. Eldridge, 424 U.S. 319, 333 (1976) (citations omitted). "[A]n unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause of the Fourteenth Amendment if a meaningful postdeprivation remedy for the loss is available." Hudson v. Palmer, 468 U.S. 517, 533 (1984).

Here, Plaintiff filed a five Count discrimination case in Federal Court against Fairfax County, Virginia, alleging (1) Violation of Title VII – Race and Sex Discrimination, (2) Violation of Title VII – Retaliation, (3) Violation of 42 U.S.C. § 1983 for violation of rights protected by the Equal Protection Clause, (4) Violation of the Americans with Disabilities Act,  and (5) Violation of Americans with Disabilities Act – Retaliation. (Exh. 8). Upon consideration of the parties' briefing and oral argument on November 6, 2015, Judge Ellis took the matter under advisement and issued a 56 page memorandum opinion on January 13, 2016, holding "the undisputed record reflects that defendant is entitled to summary judgment on all counts." (Exhs. 1 and 9).[17] No appeal was filed.

Plaintiff filed a Complaint in the Circuit Court of Fairfax County against a number of individual employees of the Fairfax County Fire and Rescue, including Defendant Reilly. (Exh. 12). The Complaint alleged (1) Conspiracy to Terminate Plaintiff's Employment in the Investigative Unit (2) Malicious Intentional interference with an Employment Relationship, and

---

[16] Defendants deny Tomasello is entitled to the damages claimed in the prior federal or state cases. In order to determine the plaintiff has an entitlement to these damages, this court would need to sit in review of Judge Kassabian's memorandum opinion. *See* Rooker-Feldman argument above.

[17] Plaintiff's claims in Counts I, II, IV, and V for denial of equal employment opportunities in training, promotion, and benefits and in Count IV for (i) failure to accommodate and (ii) making improper medical inquiries were dismissed without prejudice for failure to exhaust administrative remedies.

(3) Intentional Infliction of Emotional Distress against Reilly, Barrero, Morgan and Schwarts. On October 14, 2016, upon consideration of briefing and oral argument, Judge Kassabian sustained Defendants' Demurrer and granted leave for the plaintiff to amend. (Exh. 11). The court was scheduled to hear oral argument on Defendants' Demurrer on January 6, 2017. Because the plaintiff failed to file a timely opposition to the Demurrer, the court, on its own motion, extended the hearing for the Demurrer to January 20, 2017. On January 20, 2017, no local counsel accompanied plaintiff and the court only heard oral arguments on behalf of the Defendants. Immediately following oral argument, the court overruled the Demurrer as to Counts I and II and sustained the Demurrer without leave to amend as to Count III.

On January 27, 2017, consistent with Virginia Rules, Defendants filed a Motion to Reconsider. "Finding the Motion was well taken, the Court entered a Suspending Order in the matter on January 30, 2017. The Suspending Order allowed Plaintiff's counsel to respond to the arguments presented in the Motion to Reconsider by Friday, February 3. Plaintiff filed no response." (Exh. 5). On February 6, 2017, Judge Kassabian sustained Defendants's Demurrer to Counts I and II, finding the Plaintiff had failed to state a cause of action for intentional interference with employment relationship because the employment relationship had not been terminated. Id. The case was dismissed with prejudice on February 17, 2017. (Exh. 6). Plaintiff did not file an appeal. On March 8, 2017, Patricia Tomasello filed a pro se "Application to Reinstate her Lawsuit Against Michael Reilly et al." (Exh. 14). The assertions in the "Application" are identical to those asserted in the instant case. Id. Plaintiff did not notice the motion for a hearing or otherwise alert the court to its filing. On April 5, 2017, Judge Kassabian entered an Order denying the Motion to Reinstate for lack of jurisdiction. (Exh. 15). Plaintiff did not appeal the denial of the Motion to Reinstate.

Plaintiff has had ample opportunity to be heard on her claims. She was heard in the Eastern District of Virginia and the Circuit Court of Fairfax County. She elected not to appeal either dismissal. If she was unable to secure Virginia counsel, as she alleges, she could have proceeded *pro se*. Virginia courts are competent to address allegations of fraud or ethical and criminal misconduct alleged to have occurred in Virginia court proceedings. Plaintiff could have noticed her Motion for Reinstatement for a hearing or moved for a suspending order to allow the Circuit Court to retain jurisdiction over the case. Plaintiff contends she was denied the opportunity to "have her case heard," but this is false. (Comp. ¶ 45). Her case was heard and she lost. Plaintiff's failure to utilize "post-deprivation remedies" in the form of filing an appeal, moving for a suspending order, filing a motion for reconsideration, seeking new local counsel, or proceeding *pro se*, defeats any claim arising from an alleged violation of procedural due process. Crawford v. Parron, 709 F. Supp. 234, 237 (D.C. Cir. 1986) (noting that a claim for procedural due process requires allegations to demonstrate a lack of post-deprivation remedies).

The Due Process Clause of the Fourteenth Amendment includes a "substantive component, which forbids the government to infringe on certain 'fundamental' liberty interests *at all*, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 301 (1993). "[T]he touchstone of due process is the protection of the individual against arbitrary action of government." Wolf v. McDonnell, 418 U.S. 539, 558 (1974). The protection is not absolute, "only the most egregious official conduct can be said to be 'arbitrary in the constitutional sense.'" Jordan v. District of Columbia, 161 F. Supp. 3d 45, 54-55 (D.D.C. 2016). The test is whether the conduct "shocks the conscience," which requires more than negligence and must be considered in light of the factual circumstances of each case. Id.

Substantive due process analysis "must begin with a careful description of the asserted right." Id. It is not clear what right Tomasello contends Defendants violated. Paragraph 62 asserts plaintiff "had the right to bring a civil action against her employer, the Deputy Fire Chief, and her colleagues." As argued above, Tomasello did bring a civil action against her employer, the Deputy Fire Chief and her colleagues and her case(s) were dismissed. Defendants submit there is no fundamental right to continue to prosecute a meritless civil lawsuit, such that dismissal of the lawsuit could represent the deprivation of a fundamental right. Even assuming *arguendo* that the Plaintiff has suffered a deprivation of a protected liberty interest, Defendants actions do not shock the conscience. Greenzweig called local counsel prior to filing a motion for sanctions, as required by local rules. If local counsel felt the motion was not appropriate, local counsel could have opposed the motion and sought any available remedies if the motion was frivolous or harassing. Threat of a motion for sanctions or a bar complaint is not a deprivation of a fundamental right.

Tomasello alleges that Greenzweig intentionally set motions hearings on dates when local counsel was unavailable, thus depriving her of a "right to be heard."[18] Accepting these allegations as true as required at this stage, the actions do not shock the conscience. McMahon, as counsel for Tomasello, had the duty to confirm he was actually admitted *pro hac vice* and to confirm local counsel could appear on the date of any hearing. (Comp. ¶¶ 33-34). McMahon's allegation that he was misled by Greenzweig's praecipe(s) because he relied on the praecipe(s) as a representation that local counsel was available on those dates, is unpersuasive because his reliance on the praecipe is unreasonable. (Comp. ¶ 33) ("they misled McMahon into thinking that Lewis had already agreed to those dates and would be available to attend important hearings coming up in the case.") McMahon, who is not licensed to practice law in Virginia and is unable to appear before a Virginia

---

[18] Defendants deny these allegations.

tribunal without local counsel, was at all times responsible for confirming the availability of local

counsel. Thus, even if Greenzweig's faxes "misled" McMahon to "naively consent[] to the dates,"

her actions were not the proximate cause of McMahon's failure to appear with local counsel,

failure to oppose the Motion for Reconsideration,  or the court's dismissal of the case. Id.

### b. Defendants are Entitled to Qualified and/or Absolute Immunity

Defendants are entitled to qualified immunity because reasonable county attorneys could

disagree on whether Greenzweig's alleged actions constitute the violation of a constitutional

right.[19] For the reasons previously argued, Defendants deny that these actions are unlawful and

deny they resulted in the deprivation of any constitutionally protected right. However, if there is

*any* question, qualified immunity is intended to allow "government officials breathing room to

make reasonable but mistaken judgments about open legal questions." Lane v. Franks, 573 U.S.

228, 242 (2014). Evaluating whether the *Tomasello* complaint was amenable to a motion for

sanctions, is a matter of professional discretion. Even if Greenzweig was mistaken, the proper

remedy would be to oppose a motion for sanctions or to otherwise seek relief from the Circuit

Court. Additionally, it is not "obvious" that Grenzweig's alleged actions of scheduling hearings

on dates when she allegedly knew Lewis was unavailable "plainly violates the law."  These actions,

if true, may subject an attorney to sanctions by the court or a bar complaint if intentional, but they

do not rise to the level of a constitutional violation. Certainly, the alleged "right to file and

prosecute her action against FCFD and numerous FCFD officials in Virginia state court without

being prevented from doing so because the Defendants named herein obstructed justice in her

case" is not "clearly established." See Int'l Action Ctr. v. United States, 365 F.3d 20, 25 (D.C. Cir.

---

[19] Defendant Reilly adopts and incorporates these arguments. He cannot be liable for Greenzweig's actions under a
civil conspiracy theory if Greenzweig was entitled to qualified immunity. Additionally, he is likewise entitled to
qualified immunity as he is also a government official, who was sued for alleged misconduct in his official capacity
in the *Tomasello* case, and for his actions in furtherance of the defense of the *Tomasello* case herein.

2004) (noting it is insufficient to allege police officers violated the right to free speech, and free speech is clearly established, courts must instead define the right to a degree that would allow officials to reasonably anticipate whether their actions would result in a deprivation of the right).

Additionally, based on the allegations in Paragraph 55, plaintiff contends Greenzweig was at all times relevant to this case "engaged as a prosecutor" such that she is subject to the ethical obligations outlined in Virginia Rule of Professional Conduct Rule 3.8(b). To the extent plaintiff bases her claims against Greenzweig on any actions she "engaged [in] as a prosecutor," Greenzweig is entitled to absolute immunity. Imbler v. Pachtman, 424 U.S. 409, 430-31 (1976).

Therefore, Defendants' Motion to Dismiss Count I should be granted because the Complaint fails to demonstrate the deprivation of a constitutional right and Defendants are entitled to qualified immunity.

### iv. The Complaint Fails to State a Plausible Claim for Malicious Intentional Interference with Contractual Relations (Count V)

#### 1. Choice of Law

The District of Columbia's choice-of-law principles apply. Oveissi v. Islamic Republic of Iran, 573 F.3d 835 (D.C. Cir. 2009). "District of Columbia courts blend a 'governmental interests analysis' with a 'most significant relationship' test in order to decide choice of law issues.'" Am. Nat'l Ins. Co. v. JPMorgan Chase & Co., 164 F. Supp. 3d 104, 108 (D.D.C. 2016). "Under the 'governmental interests analysis' the Court 'must evaluate the governmental policies underlying the applicable laws and determine which jurisdiction's policy would be most advanced having its laws applied to the facts of the case under review.'" Id. Under the "most significant relationship" test this court should consider (1) the location of the injury, (2) the location of the conduct that caused the injury, (3) the domicile, residence, nationality, of individual parties, and (4) the location where the relationship of the parties is centered. Id.

Under both the "governmental interests analysis" and the "most significant relationship" test it is clear that Virginia law applies to Plaintiff's claim for tortious interference with contract. The alleged "interference" occurred in Virginia. The alleged harm (failure to appear for hearings, failure to sign pleadings, and dismissal of the case) occurred in Virginia. Tomasello, Greenzweig and Reilly are domiciled in Virginia. Virginia's public policy is served by having its laws applied to the facts of this case because the issue is whether the conduct of a Virginia County Attorney and her client constitutes tortious interference with the contract with foreign counsel (and a Virginia domiciled client) and local Virginia counsel. Further, Virginia's public policy is served by evaluating whether a Virginia County Attorney is entitled to sovereign immunity under Virginia law.

### 2. Legal Principles (Virginia Law)

The necessary elements to establish a prima facie case are: "(1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted." Dunlap, 28 Va. at 216 (2014). The plaintiff "must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that the defendant employed 'improper methods.'" Duggin v. Adams, 234 Va. 221, 226-27 (1987).

Defendants Greenzweig and Reilly are entitled to sovereign immunity under Virginia law. Sovereign immunity is "alive and well" in the Commonwealth of Virginia. Messina v. Burden, 228 Va. 301, 307 (1984). Fairfax County, a political subdivision of the Commonwealth, also enjoys sovereign immunity. Lentz v. Morris, 236 Va. 78, 82 (1988) (approving proposition in

Messina that a county shares the immunity of the State). In determining whether an employee of an immune entity is entitled to immunity, Messina articulated the following factors: (1) the nature of the function performed by the employee; (2) the extent of the state's interest and involvement in the function; (3) the degree of control and direction exercised by the state over the employee; and (4) whether the act complained of involved the use of judgment and discretion.


### 3. Analysis

Plaintiff has failed to allege facts to demonstrate a plausible claim for intentional interference with contract because the alleged "interference" was not through "improper methods" and Tomasello did not suffer any harm as a result of the alleged interference. As previously argued, Judge Kassabian's letter opinion concluded the *Tomasello* Complaint failed to state a cause of action on the merits. The case was not dismissed for the non-appearance of local counsel. Further, the threat of a motion for sanctions and a bar complaint are not "improper methods" sufficient to support a claim for tortious interference with contract.  Duggin, 234 Va. at 226-27 ("Methods of interference considered improper are those means that are illegal or independently tortious, such as violations of statutes, regulations, or recognized common-law rules.  Improper methods may include violence, threats or intimidation, bribery, unfounded litigation, fraud, misrepresentation or deceit, defamation, duress, undue influence, misuse of inside or confidential information, or breach of a fiduciary relationship.")

Defendant Greenzweig is entitled to sovereign immunity. The function performed by a county attorney is "vital to the affairs and business of the county." Grites v. Clark County, 14 Va. Cir. 165, 168 (1988). As explained in Grites:

> [The County Attorney's] advice to its governing body and officers and [her] institution or defense and conduct of litigation is of high importance in the administration of local government. The county's 'interest and involvement' is inextricably bound up in the function which [she] performs. While of necessity [she] must have considerable latitude in performing [her] duties, yet the work assigned [her] and ultimate control of it rests with the county. Finally, consonant with the very concept of an attorney, [she] is charged with the use of a high degree of judgment and discretion generally and particularly with regard to the act complained of by the plaintiff.

Evaluating whether a pleading warrants a motion for sanctions requires an examination into the legal basis for the suit and calls for the exercise of professional judgment and discretion. Thus, Greenzweig meets the test for immunity as an officer or employee of an immune entity.

"A state employee who acts wantonly, or in a culpable or grossly negligent manner, is not protected" by sovereign immunity. James v. Jane, 221 Va. 43, 53 (1980). Plaintiff contends Greenzweig "intentionally" and "maliciously" interfered with the Plaintiffs' contract, but fails to set forth sufficient factual allegations to support these conclusory assertions. Further, Judge Kassabian's letter opinion, dismissing the case on its merits because there was no cause of action for intentional interference with an employment contract under Virginia law where an at will employment contract has not been terminated,[20] in combination with Judge Ellis' memorandum opinion granting summary judgment for Fairfax County, Virginia, demonstrates the basis in support of Greenzweig's alleged threat of sanctions. (Exhs. 1 & 5).

### v. Plaintiff's Claims are Barred by *Res Judicata*

#### 1. Legal Principles

In Virginia, Rule 1:6(a) provides:

> A party whose claim for relief arising from identified conduct, a transaction, or an occurrence, is decided on the merits by a final

---

[20] Dunn, McCormak & MacPherson v. Connolly, 281 Va. 552, 559 (2011) ("[W]hen a contract is terminable at will, a plaintiff, in order to present a prima facie case for tortious interference, must allege and prove not only an intentional interference that caused the termination of the at-will contract, but also that that the defendant employed 'improper methods.'")

judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct, transaction or occurrence.

Rule 1:6(d) provides:

The law of privity as heretofore articulated in the case law in the Commonwealth of Virginia is unaffected by this Rule and remains intact. For the purposes of this Rule, party or parties shall included all named parties **and those in privity**.

"A party to the present suit, to be barred by the doctrine, must have been a party to the prior litigation, or represented by another so identified in interest that he represents the same legal right." Dotson v. Harman, 232 Va. 402, 404-405 (1986).[21] Virginia prohibits "relitigation of the same cause of action, or any part thereof, which *could have been litigated* between the same parties and their privies." Smith v. Ware, 244 Va. 374 (1992). "This holds true notwithstanding that the evidence required and remedies sought in the two claims are not the same." Ibrahim Martin-Bangura v. Commonwealth Dep't of Mental Health, 640 F. Supp. 729, 738 (E.D. Va. 2009)

### 2. Analysis

The underlying *Tomasello* case was barred by the doctrine of *res judicata*.[22] Judge Ellis' Order granting summary judgment in favor of the defendant was a ruling on the merits. Defendant Reilly, in his official capacity, is in privity with Fairfax County, Virginia because he is an employee of the Fairfax County Fire and Rescue Department and the allegations against Fairfax County arose out of Defendant Reilly's actions in the scope of his employment.[23] See Brooks v.

---

[21] Defendant submits Virginia law applies. District of Columbia law is the same. Century Int'l Arms, LTD v. Fed. State Unitary Enter. State Corp. Rosvooroushenie, 172 F. Supp. 2d 79, 95 (D.D.C. 2001) (providing elements of *res judicata*).

[22] The defense of *res judicata* was asserted by the Defendants in the *Tomasello* matter through a Plea in Bar. The case was dismissed before parties filed briefs. (Exh. 2)

[23] Defendants submit the *Tomasello* matter was against Deputy Chief Reilly in his official capacity. He was identified in paragraph 4 as a deputy fire chief for Fairfax County Fire and Rescue Department. (Exh. 12). The

Arthur, 611 F. Supp. 2d 592, 599-600 (W.D. Va. 2009) (holding that individual Virginia Department of Corrections supervisors were in privity with the Department of Corrections and, therefore, a prior decision in an employee's grievance proceeding against the Department barred the employee from suing the individual supervisor in subsequent suit). As in Brooks, "all allegations lodged against [Defendant Reilly in the *Tomasello* matter] . . . arose out of [his] actions as [a deputy fire chief] employed by the [County], which may only act through its employees or its agencies. Id. Thus, Defendant Reilly is in privity with Fairfax County, Virginia as it relates to Tomasello's claims. The three causes of action asserted in *Tomasello* (Civil Conspiracy, Intentional Interference with Employment Contract, and Intentional Infliction of Emotional Distress) arose out of the same conduct as the Title VII and ADA claims asserted in the Federal Complaint. All claims asserted in the *Tomasello* case "could have been litigated" in the federal case because they arise out of the same conduct or occurrence. Therefore, the *Tomasello* case was barred by the doctrine of *res judicata* and the plaintiff has suffered no injury as a result of the dismissal of her case.

In the instant case, plaintiff continues to seek to recover damages related to alleged discrimination. See e.g., (Comp. ¶ 92). The claims presented are different, but her damages rely on the underlying assumption that *she is entitled to* "hundreds of thousands of dollars in damages had her case been allowed to move forward." Id. To the extent any part of her current case seeks to recover damages for alleged discrimination or complaints based on the allegations in the *Tomasello* case, those claims are barred.

---

Complaint alleged he directed his subordinates to "make life difficult" for Tomasello (Exh. 12, ¶ 33) The allegations against Deputy Chief Reilly relate to his performance of his obligations in the scope of his employment. Further, plaintiff's instant complaint acknowledges Deputy Chief Reilly was acting in his official capacity as plaintiff contends his actions constitute state action.

## V. CONCLUSION

WHEREFORE, the foregoing considered, Defendants Jamie Greenzweig and Michael T.

Reilly move this court to dismiss this case for lack of personal jurisdiction, or alternatively, dismiss

this case for lack of venue, lack of subject matter jurisdiction, and the failure to state a plausible

claim for relief.

**JAMIE GREENZWEIG**
**And**
**MICHAEL T. REILLY**
By Counsel


_____/s/ John D. McGavin_____
John D. McGavin (DCB) 475899
BANCROFT, MCGAVIN, HORVATH AND JUDKINS, P.C.
9990 Fairfax Boulevard, Suite 400
Fairfax, VA 22030
Telephone:     (703) 385-1000
Facsimile:     (703) 385-1555
jmcgavin@bmhjlaw.com
azick@bmhjlaw.com
*Counsel for Defendants*

### <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on March 12, 2019 a copy of the foregoing Memorandum of Points and Authorities in Support of Motion to Dismiss was served upon the following counsel using this Court's CM/EXF system:


Mark G. Chalpin, Esq.
(DC Bar #366794)
116 Billingsgate Lane
Gaithersburg, MD 20877
Tel: (301) 990-4900
Fax: (832) 201-7392
Mark.chalpin@gmail.com
Counsel for Plaintiffs


David Hudgins, Esq.
Hudgins Law Firm
515 King Street, Suite 400
Alexandria, Va. 22314
Tel: (703) 739-3300
Fax: (703) 739-3700
Counsel for Defendant Lewis

_____/s/_____

John D. McGavin